UNITED STATES DISTRICT COURT
DISTRICT OF COLUMBIA

| | | |
|---|---|---|
| UNITED STATES OF AMERICA | : | |
| | : | Case No. 1:21-cr-668 (TNM) |
| v. | : | |
| | : | |
| MICK CHAN | : | |

## GOVERNMENT'S TRIAL BRIEF

The United States, by and through its attorneys, respectfully submits this brief summarizing the government's evidence at trial and legal issues that may be brought before the Court. As described below, the government will introduce video evidence, testimony from law enforcement witnesses, and admissions made by the defendant. In an effort to streamline its presentation for this bench trial and focus on the matters in dispute, the parties have agreed to certain stipulations. The parties have also agreed to admission of all exhibits.

## I.    THE JANUARY 6 CAPITOL RIOT AND THE DEFENDANT'S ACTIONS

On January 6, 2021, thousands of people descended on the U.S. Capitol building and grounds and interrupted the Joint Session of Congress that had convened to certify the votes of the Electoral College for the 2020 Presidential Election. Vice President Michael R. Pence was serving as the President of the Senate at the U.S. Capitol and presiding over the Joint Session and Senate proceedings. On that day, U.S. Secret Service was present for the protection of the Vice President and his family members, and physical barriers and law enforcement officers surrounded the U.S. Capitol building and grounds. At all relevant times, the U. S. Capitol building and its grounds—including the northwest lawn, the northwest staircase, the upper west terrace, and the entire U.S. Capitol building itself—were closed to members of the public.

The defendant, Mick Chan, was among the rioters who illegally entered the U.S. Capitol grounds and then entered the U.S. Capitol building itself.  On the grounds, rioters toppled barricades established by the U.S. Capitol Police that consisted of metal bike racks, physically linked end to end.  On the west side of the U.S. Capitol, workers had erected scaffolding over a staircase that led to the upper west terrace in preparation for the upcoming presidential inauguration.  Alongside the northwest staircase and scaffolding was a banister that was approximately ten feet tall.  Rioters stacked metal bike racks against the banister to build a makeshift ladder system that allowed rioters to climb atop the banister.  Rioters then used the banister to access the staircase, upper west terrace, and the U.S. Capitol building.  Law enforcement officers were positioned on the staircase and attempted to keep the rioters away from the building.

The defendant, Mick Chan, came to Washington D.C. to attend the "Stop the Steal" rally.  Instead of attending the rally, Chan traveled to the U.S. Capitol grounds and took part in the riot.  According to Chan, he observed toppled barricades when he entered the grounds.  Chan made his way to the northwest staircase and climbed to the top of the banister.  He was one of the first to climb atop of the banister and, while there, Chan worked with other rioters to lift bike racks off the ground and onto the banister.

He also cut and tore off portions of the white tarp that covered the scaffolding.  By removing portions of the tarp, Chan created an additional access point for rioters to access the northwest stairs and the upper west terrace through the scaffolding.

When Chan was on the banister, the situation around him was escalating rapidly, both on the northwest stairs and the lawn below.  Rioters began to vastly outnumber the police officers.  Police officers were positioned on the northwest staircase and attempted to stop rioters from entering the building.  Officers deployed crowd control measures, including pepper balls and

spray.  Chan was struck with an object, presumably a pepper ball, to his temple.  He also ingested the pepper spray.  Chan stated that the police's crowd control measures made him mad.

At approximately 2:09 p.m., rioters on the northwest stairs broke through the line of police and made their way to the building.  Soon thereafter, Chan traveled across the banister and up the stairs to the upper west terrace.  While on the stairs, at approximately 2:14 p.m., Chan helped a rioter who was climbing the wall and encouraged others to join him.

Upon reaching the upper west terrace, Chan was among an expansive crowd of rioters. These rioters on the upper west terrace breached the building at three different locations—the Senate Wing Door, the Parliamentarian Door, and the Upper West Terrace Door.  While there, Chan observed the chaos that was occurring on the northwest lawn below, which included rioters who were climbing scaffolding, scaling the walls, and engaged in violent struggles with police officers.

Meanwhile, the Joint Session of Congress had been suspended and members of Congress were being evacuated by Capitol Police to secure locations within the U.S. Capitol complex.  The presence of the mob inside and outside of the U.S. Capitol building presented a threat to the physical safety of members of Congress and to police themselves.  Capitol Police was forced to choose between protecting members of Congress and guarding sensitive spaces in the building.

At approximately 2:45 p.m., Chan entered the building through the Upper West Terrace Door.  Moments after entering, Chan located the surveillance camera in this entry way, extended his middle finger directly at the camera, and then raised his cellular telephone to take a picture of his act.  Chan then traveled inside the U.S. Capitol and made his way into the Rotunda. Over the next thirty minutes, Chan walked between the Rotunda and the Rotunda Doors on the east side of the U.S. Capitol.  Chan was initially inside the Rotunda from approximately 2:47 to 2:49 p.m.

before walking into an entryway near the Rotunda Doors on the east side of the U.S. Capitol, where he was from 2:51 to 2:52 p.m. Instead of exiting through those doors, Chan returned to Rotunda, where he was from 2:53 to 2:55 p.m. Chan again left the Rotunda for that entryway near the Rotunda Doors, where he remained from 2:55 to 3:00 p.m. But again, Chan decided not to exit the building and returned to the Rotunda once again, where he remained from 3:01 to 3:10 p.m. Police officers eventually cleared the rioters, including Chan, from the Rotunda. Chan was forced to exit the U.S. Capitol through the Rotunda doors at approximately 3:14 p.m. Chan then joined other rioters on the East Steps before he left the U.S. Capitol grounds.

Chan's conduct while on the U.S. Capitol grounds and inside the U.S. Capitol building establish his violations of 18 U.S.C §§ 1752(a)(1) and 1752(a)(2), and 40 U.S.C. §§ 5104(e)(2)(D) and 5014(e)(2)(G).

## II.    THE GOVERNMENT'S PROOF

### A.  Witnesses and Stipulations

The government will call Captain Ronald Ortega from the Capitol Police who will provide an overview of the U.S. Capitol building and grounds and explain how the building and grounds were overrun on January 6, 2021. The government will present video footage that will document what occurred as the U.S. Capitol grounds and building were breached. The video evidence will also document what Chan did before he entered the building, what he did while inside the building, and what he did after exiting the building. The video evidence will be from closed-circuit video (CCV), body-worn camera footage from a Metropolitan Police Department officer, and video taken by third parties who were present at the U.S. Capitol.

The government will also present stipulated trial testimony from U.S. Secret Service (USSS) Special Agent Elizabeth Glavey that will be relevant to prove several key elements of the

4

some of the charged offenses. Counts One and Two, which charge violations of 18 U.S.C. §§ 1752(a)(1) and 1752(a)(2), require proof that the defendant entered or remained within a restricted building or grounds. Grounds may be restricted, under this statute, if a USSS protectee is temporarily visiting. 18 U.S.C. § 1752(c)(1)(B). Here, that is the former Vice President, who was visiting the U.S. Capitol in his capacity as President of the Senate, for the proceedings relating to the certification of the Electoral College vote.  Special Agent Glavey's testimony in *United States v. Larry Brock*, 1:21-cr-000140-JDB, proves that Vice President Pence was visiting the U.S. Capitol on January 6, 2021, he presided over the entirety of the certification, and he remained at the U.S. Capitol during the riot.

The government will present testimony of agents with Federal Bureau of Investigation who interviewed Chan about the riot that transpired at the U.S. Capitol and his involvement in the riot.

In effort to streamline the trial, the government and defendant have reached the following stipulations: (1) a description of the U.S. Capitol Building and Grounds; (2) an overview of the timeline and events of the Certification of the Electoral College Vote; (3) the defendant's identity and presence on the U.S. Capitol grounds and in the U.S. Capitol building on January 6, 2021; (4) the operation and maintenance of the U.S. Capitol Police closed circuit video monitoring; (5) the operation and maintenance of the U.S. House and U.S. Senate recording studio closed circuit video monitoring; (6) authenticity of the government's video evidence that includes a video montage from U.S. Capitol Police's CCV footage, a compilation video from the U.S. House and Senate, U.S. Capitol Police's CCV videos, open source videos, and a video recorded from a body worn camera of a Metropolitan Police Department; and (7) to the testimony of USSS Special Agent Elizabeth Glavey.

**B.  Elements of the Crimes Alleged**

The Information charges four offenses.  The offenses are as follows[1]:

Count One

Count One of the Information charges the defendant with entering or remaining in a restricted building or grounds, in violation of 18 U.S.C. § 1752(a)(1).  In order to find the defendant guilty of this offense, the Court must find that the government proved each of the following elements beyond a reasonable doubt:

1.  First, that the defendant entered or remained in a restricted building or grounds without lawful authority to do so; and

2.  Second, that the defendant did so knowingly.

The term "restricted building or grounds" means any posted, cordoned off, or otherwise restricted area of a building or grounds where a person protected by the Secret Service is or will be temporarily visiting.

The term "person protected by the Secret Service" includes the Vice President and the immediate family of the Vice President.

A person acts "knowingly" if he realizes what he is doing and is aware of the nature of his conduct, and does not act through ignorance, mistake, or accident.  In deciding whether the defendant knowingly entered or remained in a restrict building, you may consider all of the evidence, including what the defendant did or said.

---

[1] Unless otherwise noted, the instructions here reflect the jury instructions used by the Court in *United States v. Hale-Cusanelli*, 21-CR-37 (TNM).

<u>Count Two</u>

Count Two of the Information charges the defendant with disorderly or disruptive conduct in a restricted building or grounds, in violation of 18 U.S.C. § 1752(a)(2).  In order to find the defendant guilty of this offense, the Court must find that the government proved each of the following elements beyond a reasonable doubt:

1. First, that the defendant engaged in disorderly or disruptive conduct in, or in proximity to, any restricted building or grounds;

2. Second, that the defendant did so knowingly, and with the intent to impede or disrupt the orderly conduct of Government business or official functions;

3. Third, that the defendant's conduct occurred when, or so that, his conduct in fact impeded or disrupted the orderly conduct of Government business or official functions.

"Disorderly conduct" occurs when a person is unreasonably loud and disruptive under the circumstances, or interferes with another person by jostling against or unnecessarily crowding that person.

"Disruptive conduct" is a disturbance that interrupts an event, activity, or the normal course of a process.

The terms "restricted building or grounds" and "knowingly" have the same meanings as previously defined.

<u>Count Three</u>

Count Three of the Information charges the defendant with disorderly or disruptive conduct in a U.S. Capitol building or grounds, in violation of 40 U.S.C. § 5104(e)(2)(D).  In order to find

the defendant guilty of this offense, the Court must find that the government proved each of the following elements beyond a reasonable doubt:

1. First, that the defendant engaged in disorderly or disruptive conduct in any of the United States Capitol Buildings;

2. Second, that the defendant did so with the intent to impede, disrupt, or disturb the orderly conduct of a session of Congress or either House of Congress; and

3. Third, that the defendant acted willfully and knowingly.

The term "United States Capitol Buildings" includes the United States Capitol located at First Street, Southeast, in Washington, D.C.

The term "disorderly or disruptive conduct" has the same meaning described in the instructions for Count Two defining "disorderly conduct" and "disruptive conduct."

A person acts "willfully" if he acts with the intent to do something that the law forbids, that is, to disobey or disregard the law. "Willfully" does not, however, require proof that the defendant be aware of the specific law or rule that his conduct may be violating.

The term "knowingly" has the same meaning as previously defined.

<u>Count Four</u>

Count Four of the Information charges the defendant with parading, demonstrating, or picketing in a Capitol Building, in violation of 40 U.S.C. § 5104(e)(2)(G). In order to find the defendant guilty of this offense, the Court must find that the government proved each of the following elements beyond a reasonable doubt:

1. First, that the defendant paraded, demonstrated, or picketed in any of the United States Capitol Buildings;

2. Second, that the defendant acted willfully and knowingly.

The terms "parade" and "picket" have their ordinary meanings.  The term "demonstrate" refers to conduct that would disrupt the orderly business of Congress by, for example, impeding or obstructing passageways, hearings, or meetings, but does not include activities such as quiet praying.[2]

The terms "United States Capitol Buildings," "knowingly," and "willfully" have the same meanings as previously defined.

## III.   THE PARTIES' EVIDENCE AND ANTICIPATED DEFENSES

The parties are mutually committed to trying the case expeditiously and without lengthy arguments about objections.  The government has met and conferred with defense counsel about the evidence it plans to present.  Based on that meeting, the government expects that all of its exhibits will be admitted without objection.  Likewise, based on defense counsel's representations about his plan for trial, the government expects that it would not object to most of the defendant's exhibits. The government may nonetheless object to particular questions about exhibits.[3]

The government anticipates that the defense will focus on the defendant's actions and his *mens rea* in committing the charged offenses.  The government's evidence of Chan's actions on January 6, together with his subsequent statements, will establish that Chan acted with the requisite intent.

---

[2] *Bynum v. United States Capitol Police Board*, 93 F. Supp. 2d 50, 58 (D.D.C. 2000).

[3] For example, the government may offer statements that defendant made to the FBI during his interview. Because the defendant is an opposing party, his statements are not hearsay pursuant to Fed. R. Evid. 801(d)(2)(A). There is no similar rule allowing the defendant to admit his own statements. Barring an exemption from hearsay (e.g., Rule 801(d)), an exception to the hearsay rule (e.g., Rule 803), or statements made admissible by the Rule of Completeness (Rule 106), the defendant's own statements, when offered by him, are inadmissible hearsay.

## IV.    CONCLUSION

Chan was an active participant in the breach of the U.S. Capitol on January 6, 2021.  Acting together and with others around him, he joined rioters that were seeking to stop the certification of the Electoral College vote both on the U.S. Capitol grounds and inside the U.S. Capitol building. At trial, the evidence will prove beyond a reasonable doubt that the defendant committed each offense charged in the Information.

Respectfully submitted,

MATTHEW M. GRAVES
United States Attorney

By:    /s/ *Matthew Moeder*
Matthew Moeder
Assistant United States Attorney
Mo. Bar. No. 64036
Matthew.Moeder@usdoj.gov
Katherine Boyles
D. Conn. Fed. Bar No. PHV20325
United States Attorney's Office
601 D Street NW
Katherin.Boyles@usdoj.gov