## UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF COLUMBIA

| | | |
|---|---|---|
| **UNITED STATES OF AMERICA,** | ) | |
| | ) | |
| **Appellee,** | ) | |
| | ) | |
| **v.** | ) | **No. 21-cr-0668 (TNM)** |
| | ) | |
| **MICK CHAN,** | ) | |
| | ) | |
| **Appellant.** | ) | |
| | ) | |

## DEFENDANT'S MOTION FOR RELEASE PENDING APPEAL

Defendant-Appellant Mick Chan respectfully moves this Court, pursuant to 18 U.S.C. §§ 3141(b) and 3143(b) for a motion for release pending appeal, and for stay of execution of his sentence under Federal Rule of Criminal Procedure 38. Mr. Chan's request for release is based on his claim on appeal that this Court erroneously sentenced him without considering scientifically valid reasons for variance under the 18 U.S.C. § 3553(a) factors.

The Court need not resolve the merits of Mr. Chan's claim in order to release him pending his appeal. This Court need only find that his appellate claim raises a "substantial question of law or fact." Mr. Chan respectfully submits that the appeal does raise such a question for the reasons stated below.

1

## **Background**

On September 28, 2021, Mr. Chan made his initial appearance by video conference and was ordered released on his personal recognizance, a status in which he has remained throughout this case. On November 12, 2021, the government filed a four-count Information against Mr. Chan charging him with Entering and Remaining in a Restricted Building or Grounds, in violation of 18 U.S.C. § 1752(a)(1) (Count One); Disorderly and Disruptive Conduct in a Restricted Building or Grounds, in violation of 18 U.S.C. § 1752(a)(2) (Count Two); Disorderly Conduct in a Capitol Building, in violation of 40 U.S.C. § 5104(e)(2)(D) (Count Three); and Parading, Demonstrating, or Picketing in a Capitol Building, in violation of 40 U.S.C. § 5104(e)(2)(G) (Count Four).

On January 24, 2023, Mr. Chan was convicted after a one-day bench trial as to Counts 1, 2, and 4, and was found not guilty as to Count 3. On May 5, 2023, the Court sentenced Mr. Chan to 3 months' of imprisonment followed by 12 months of probation. The Court allowed Mr. Chan to remain on bond pending a date to be set by the Bureau of Prisons for his self-surrender. The Court also granted an extension of his initial surrender date. His current self-surrender date is July 30, 2023.

Mr. Chan timely filed a notice of appeal, and the appeal has been docketed at No. 23-3070. Counsel has received the trial transcripts but not the sentencing

transcript.

## **Grounds for Release Pending Appeal**

Under 18 U.S.C. § 3143(b)(1), a court shall order release pending appeal if it finds:

(A)  by clear and convincing evidence that the person is not likely to flee or pose a danger to the safety of any other person or the community if released . . . ; and

(B)  that the appeal is not for the purpose of delay and raises a substantial question of law or fact likely to result in –

    (i)  reversal,

    (ii)  an order for a new trial,

    (iii)  a sentence that does not include a term of imprisonment, or

    (iv)  a reduced sentence to a term of imprisonment less than the total of the time already served plus the expected duration of the appeal process.

Mr. Chan has demonstrated by clear and convincing evidence that he will not flee or pose a danger to the community by virtue of his complete compliance with the pretrial release conditions that have been in place since the outset of this case. As the Court is aware, Mr. Chan lives in New Jersey, where he cares for his elderly father and is being monitored by the Pretrial Services Office of the District of New Jersey. Undersigned counsel has confirmed through Mr. Chan's Pretrial Services

Agency Officer that, as of the date of this motion, Mr. Chan remains in compliance with his conditions of release.

Mr. Chan submits that because this appeal is not for purposes of delay and because he presents no issue of dangerousness or potential flight, the only question is whether his appeal raises a "substantial question of law or fact" that, if decided in his favor, would be likely to result in reversal, or a sentence that does not include a term of imprisonment, or a term of imprisonment that is less than the expected duration of the appeal process.

A "substantial question" within the meaning of § 3143(b) is "'a close question or one that very well could be decided the other way.'" *United States v. Perholtz*, 836 F.2d 554, 555 (D.C. Cir. 1987) (per curiam) (quoting *United States v. Bayko*, 774 F.2d 516, 523 (1st Cir. 1985)). This standard does not require that the Court find that Mr. Chan's appeal establishes a likelihood of reversal before it may grant him release pending appeal. *See Bayko*, 774 F.2d at 522-23. Rather, the Court must "evaluate the difficulty of the question" on appeal, *United States v. Shoffner,* 791 F.2d 586, 589 (7th Cir. 1986), and grant release pending appeal if it determines that the question is a close one or one that "very well *could* be" decided in the defendant's favor.

4

In this case, Mr. Chan respectfully submits that the question he wishes to raise on appeal is a substantial one. Mr. Chan submits that the district court did not properly consider the 18 U.S.C. § 3553(a) factors in imposing a sentence and failed to properly consider his history and characteristics. Punishment must "suit not merely the offense but the individual defendant." *Pepper v. United States*, 562 U.S. 476, 488 (2011) (quoting *Wasman v. United States*, 468 U.S. 559, 564 (1984)). "There is a longstanding tradition in American law, dating back to the dawn of the Republic, that a judge at sentencing considers the whole person before him or her as an individual." *Concepcion v. United States*, 142 S. Ct. 2389, 2395 (2022).

Specifically, the district court explicitly stated that it did not find the trauma that Mr. Chan experienced as a child relevant to his sentencing. This background was discussed extensively in the sentencing memo submitted to the Court:

> Although Mr. Chan was the product of a two-parent household, both his mother and father were absent for various reasons. Mr. Chan spent the early parts of his childhood in Hong Kong, without family or community. His father was largely absent from his life, choosing to spend most of his time traveling to the United States on business. His mother suffered from depression and other mental health issues that left her hospitalized for significant periods of time, and unable to properly care for her children. In the mid-1980s, Mr. Chan's father moved permanently to the United States, and his wife and other children soon followed him. Due to visa issues, Mr. Chan was left alone in Hong Kong, where he lived under the custody of family friends. His caretakers viewed him as an obligation and Mr. Chan found himself isolated and alone, spending much of his time in transactional relationships with adult strangers. His caretakers' own children were significantly older than Mr. Chan and he was not able to bond with them. Instead, he spent his time engaging in child

labor: making jewelry for the profit of his caretakers. Mr. Chan's memories of Hong Kong are now limited and mundane, consisting of events such as learning to take the bus on his own as a child. It was not until 1990 that Mr. Chan joined the rest of his family in the United States at the age of ten.

Once in the United States, Mr. Chan faced new challenges. He discovered upon arrival in the United States that in his absence, his mother had committed suicide, having jumped off an apartment building in New York City. Not only did no one inform him of her death while he was in Hong Kong, no one informed him of her death upon his arrival in the United States, until a planned visit to "see" his mother in a mausoleum. Only then did Mr. Chan realize that she was gone from his life forever, and he now describes her loss as the single worst thing that has ever happened to him. His mother's death hurt all her children, but it hit Mr. Chan especially hard, as he was her favorite child. His father quickly remarried a woman who spoke only Mandarin. Mr. Chan, who spoke Cantonese and English, was left unable to communicate with the only maternal figure remaining in his life. His father remained distant, speaking rarely about his mother's death, providing little emotional support to his children, and spending no quality time with them. Mr. Chan's father instead focused most of his time and energy on his burgeoning import export business. Although his father provided Mr. Chan with financial support in childhood, a gambling problem ultimately devasted his finances which forced Mr. Chan to drop out of college. Facing tuition of $20,000 a year, half of which was covered by scholarships, Mr. Chan left his studies after one of his father's checks bounced.

In high school, Mr. Chan spent most of his time with a now ex-girlfriend, and their breakup and estrangement left him without social connections to his adolescence. Without family support and community, and without the social circles offered to individuals who attend and complete college, Mr. Chan turned to what so many individuals these days do: the Internet. On the Internet, he finally found a salve for his isolation: he found his tribe. On the Internet, Mr. Chan found individuals who, unlike his family, he freely communicated with. He found individuals who shared his frustrations at the COVID lockdowns occurring during the pandemic. Although not previously political, Mr. Chan found himself agreeing with and identifying with conservative viewpoints espoused on online platforms such as Facebook. Through these

platforms, he connected with and found community in like-minded individuals. He started posting his opinions and receiving the kind of positive feedback he rarely received from his family. He developed the types of strong bonds most individuals form at a young age with family members, but which he never had in the past. His online community of Trump supporters meant the world to him. He now reports that most of his friends are people he met online, and that he does not have close friends outside of his political community. It was due to these relationships that Mr. Chan went to the Capitol on January 6.

Mick Chan Sentencing Memo 4-6. A growing body of scientific and psychiatric research, however, suggests that traumatic experiences accumulate and influence the decision-making process of individuals years later. *Id*. at 5-6. Mr. Chan suffered from childhood neglect, which led to later isolation. This directly precipitated his involvement in the Trump community which ultimately led to his participation in these charged crimes. Mr. Chan respectfully submits that the Court failed to appreciate the impact of this extensive history of neglect and abandonment on Mr. Chan's emotional and social development and decision-making. A proper consideration of his § 3553(a) factors would have led to a non-custodial sentence.

## <u>Conclusion</u>

For these reasons and any others the Court deems just and proper, Mr. Chan asks that the Court grant this motion and order Mr. Chan's release pending resolution of his appeal as well as a stay of the execution of his sentence.

Respectfully submitted,

K. Anthony Thomas
Federal Public Defender


By:  \_/s/ *Shishene Jing*_____
Shishene Jing
Assistant Federal Public Defender
1002 Broad St.
Newark, NJ 07102
(609) 649-5007
Shishene_Jing@fd.org

8